**Sylvester PEARL, Petitioner,**

v.

**John CASON, Respondent.**

**No. CIV.A.01–CV–73051–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 13, 2002.

Sylvester Pearl, Mound Correctional Facility, Detroit, MI, pro se.

Jerrold E. Schrotenboer, Jackson County Prosecutor's Office, Jackson, MI, Brenda E. Turner, Michigan Dept. of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent.

### OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

EDMUNDS, District Judge.

Petitioner Sylvester Pearl, a state prisoner presently confined at the Mound Correctional Facility in Detroit, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder and felony firearm following a jury trial in the Jackson County Circuit Court in 1997. He was sentenced to 40 to 80 years imprisonment on the murder conviction and a consecutive term of two years imprisonment on the firearm conviction. In his pleadings, Petitioner raises claims concerning the failure to disclose a promise of leniency, the admission of other acts evidence, the effectiveness of trial counsel, the admission of a photograph of the victim, prosecutorial misconduct, the jury instructions, and the use of shackles in the courtroom. For the reasons stated below, the petition for a writ of habeas corpus is denied.

### I. *Facts*

Petitioner's convictions stem from the shooting death of 19–year–old Juan de la Rosa at Petitioner's place of business in Jackson, Michigan on February 12, 1997. De la Rosa's body was found in a wooded area on February 13, 1997. Petitioner was charged with one count of open murder and felony firearm. The prosecution's theory of the case was that Petitioner killed de la Rosa because de la Rosa owed him $85.00 for marijuana and because he suspected that de la Rosa burglarized his garbage collection business. The defense theory was that key prosecution witness Anthony Clay shot de la Rosa several times and then ordered Petitioner to do so. Petitioner then helped dispose of the body because the shooting took place in his shop.

Prior to trial, defense counsel moved to have Petitioner's leg shackles removed, but the trial court denied the request.

The prosecution presented several witnesses who testified that Petitioner dealt

marijuana and that de la Rosa owed him money. De la Rosa's girlfriend, Lisa Rodriguez, testified that de la Rosa owed Petitioner $85.00 for marijuana and that de la Rosa told her that he had broken into Petitioner's shop to steal marijuana. De la Rosa's friend, Michael Johns, also testified that Petitioner had told him about breaking into the shop. Lucas Rodriguez testified that Petitioner had given him and de la Rosa marijuana on credit. He further admitted that he and de la Rosa broke into Petitioner's shop and stole marijuana and a scale. Petitioner subsequently confronted them about repayment, but did not threaten or harm either of them.

Police testimony established that de la Rosa's body was found in a wooded area wrapped in plastic bags, secured with duct tape, rope, and electrical cord, tied into the fetal position, and placed in a large cardboard barrel. An autopsy revealed that de la Rosa died from seven gunshot wounds. A photograph of the body was admitted into evidence over defense objection.

Police officers testified about their search of Petitioner's home and business, stating that they recovered marijuana, drug paraphernalia, three rifles, and .22 caliber ammunition. Expert testimony established that bullet fragments recovered from de la Rosa's body were consistent with the ammunition found in Petitioner's home.

William Henry Wolf, a prison inmate incarcerated with Petitioner, testified that Petitioner told him that he killed de la Rosa because de la Rosa owed him money, had broken into his shop, and had not properly performed mechanical work. Wolf gave conflicting testimony about whether Petitioner or Clay was the initial shooter. Wolf admitted that he went to police with this information in order to obtain leniency in his pending criminal proceedings.

Anthony Clay testified that on the morning of the shooting, he, Petitioner, and David Neelis were driving in Defendant's van when they saw de la Rosa shoveling snow. Petitioner said that de la Rosa owed him money, that he had been told that de la Rosa broke into his shop, and that he wanted to kill de la Rosa. They went to Petitioner's home, retrieved a gun, returned to get de la Rosa, and drove to Petitioner's shop. Once inside, Petitioner confronted de la Rosa about the burglary, and a fight ensued. Clay stated that he went outside, then heard a bump and then about four gunshots. When he re-entered the shop, he saw de la Rosa on the floor, bleeding and gasping and then not breathing. Petitioner and Neelis were standing over him. Petitioner offered Clay the gun, but he refused to take it. Petitioner then threw him some gloves and told him to take the gun. Clay took the gun, turned his head, and fired two shots. He gave the gun back to Petitioner who gave it to Neelis, and Neelis took it upstairs. They then wrapped the body in garbage bags and rope. Petitioner told Clay and Neelis to clean up the blood and left. Petitioner returned wearing different clothes. They then put more bags around the body and tied it into the fetal position. The left the body in the shop and went out to collect garbage. They returned to the shop one and one-half to two hours later. They put the body in Petitioner's van and disposed of the body in a wooded area on Blue Ridge Road. Clay got dropped off at his home and then returned to the county jail because he was on work release. Clay also admitted that he had participated in drug deals with Petitioner. During questioning, the prosecution asked Clay if he had been given any consideration in exchange for his testimony, and Clay replied that he had not.

Jackson Police Detective Richard Allen testified that Petitioner voluntarily ap-

peared for questioning in this matter. Although Petitioner initially denied any involvement in the killing, he eventually admitted being present when Clay shot de la Rosa and helping him dispose of the body. Michigan State Police Sergeant Harris Edwards testified that he also interviewed Petitioner. Petitioner first told him that Clay was the shooter and denied touching the gun. He then admitted that he touched the gun, but claimed that he never fired it. Upon further questioning, Petitioner finally admitted firing the gun at de la Rosa, but claimed that he did so because he feared that Clay would shoot him. Petitioner eventually informed Harris that David Neelis was also present when the shooting occurred.

Detective Robert Cole testified that he questioned Anthony Clay about the incident. Although Clay initially denied knowing anything about de la Rosa's death, he subsequently admitted being outside the shop when Petitioner did the shooting. Clay said that a third person was present, but did not identify that person. He also denied firing the gun or assisting in disposing of the body.

Jackson Police Officer Steven Shiley testified that he interviewed William Wolf twice prior to trial. On both occasions, Wolf said that Petitioner had told him that they lured de la Rosa to the shop because he had broken into the shop and owed Petitioner money. Wolf also said that Petitioner told him that Clay was the first shooter.

David Neelis testified that he was on parole at the time of the incident and had worked for Petitioner for a few months. Neelis testified that Clay pushed de la Rosa and shot him. Clay then handed the gun to Petitioner. Neelis went outside and heard two more gunshots. He then fled to his girlfriend's house. Neelis admitted that he and Petitioner had communicated about the incident and their testimony through letters while incarcerated.

Petitioner also testified in his own defense at trial. Petitioner stated that de la Rosa, Clay, and Neelis all worked for him. Petitioner described his garbage collection business and admitted selling marijuana to close friends and family, but stated that he did not deal for profit. He also admitted that de la Rosa owed him $85.00 and that he suspected that de la Rosa had burglarized his shop, stealing marijuana and a scale, but denied ever stating that he wanted to kill de la Rosa. Petitioner claimed that Clay first shot de la Rosa four or five times, killing him. Petitioner then shot at de la Rosa twice, but did not know if he even hit him. Petitioner admitted assisting Clay in disposing of the body.

During closing arguments, the prosecutor stated that Petitioner, Clay, and Neelis all shot de la Rosa and that Petitioner forced the others to shoot. The prosecutor also stated that a firearms expert had testified that the bullet fragments from de la Rosa's body were "conclusive" with bullets found at Petitioner's home.

At the close of trial, defense counsel asked the court to instruct the jury on the lesser included offense of careless, reckless, or negligent use of a firearm and on the defense of accident, but the trial court denied the requests.

Following deliberations, the jury found Petitioner guilty of second-degree murder and felony firearm. The trial court subsequently sentenced him to consecutive terms of 40 to 80 years imprisonment and two years imprisonment on those convictions.

## II. *Procedural History*

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals and a motion for remand, es-

sentially asserting the same claims raised in the present petition. The Michigan Court of Appeals granted the motion to remand on September 10, 1998 and ordered the trial court to conduct an evidentiary hearing to determine whether the prosecution had an agreement with Anthony Clay prior to trial. The trial court conducted an evidentiary hearing on October 21, 1998 and concluded that there was no deal for Clay's testimony. The Michigan Court of Appeals thereafter affirmed Petitioner's convictions in a *per curiam* decision. *People v. Pearl,* No. 207637, 2000 WL 33529751 (Mich.Ct.App. Feb.25, 2000) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied in a standard order. *People v. Pearl,* 463 Mich. 859, 617 N.W.2d 558 (2000).

Petitioner filed the present petition for a writ of habeas corpus on August 17, 2001, asserting the following claims:

I. The trial prosecutor deliberately mislead the jury that witness Anthony Clay did not have any expectations of leniency in exchange for his testimony.

II. The trial court erred in admitting evidence of prior bad acts.

III. He was denied the effective assistance of counsel failed to object to the admission of prejudicial evidence.

IV. The trial court abused its discretion in admitting a photograph of the victim.

V. The prosecutor engaged in misconduct by arguing facts not in evidence.

VI. The trial court abused its discretion by failing to instruct the jury on reckless use of a firearm and accident.

VII. He was denied a fair trial because he was required to appear in court in leg shackles.

Respondent filed an answer to the petition on February 15, 2002, asserting that Petitioner's claims should be denied for lack of merit and/or based upon procedural default. Respondent filed a supplemental answer citing new case law on May 17, 2002.

### III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court undertook a detailed analysis of the correct standard of review under the AEDPA. According to the Court:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13, 120 S.Ct. 1495 (O'Connor, J., delivering the opinion of the Court on this issue).

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 411, 120 S.Ct. 1495. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the hold-ings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

Lastly, § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. *Analysis*

### A. *Promise of Leniency*

Petitioner first asserts that he is entitled to habeas relief because the prosecution allowed witness Anthony Clay to mislead the jury about whether the prosecution gave him an expectation or promise of leniency in exchange for his testimony.

The United States Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz,* 768 F.2d 773, 777 (6th Cir.1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also Kyles v. Whitley,* 514

U.S. 419, 432–36, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375; *Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

The Michigan Court of Appeals concluded that the trial court did not err in finding that no expectation or understanding of leniency in exchange for Clay's testimony was given by the prosecutor prior to that testimony. *Pearl,* 2000 WL 33529751 at *2. The Court of Appeals upheld the trial court's factual determination that the prosecution had not promised Clay any consideration for his testimony before trial, and only gave Clay favorable treatment after he testified. The Court of Appeals also discounted a newspaper article which gave a contrary account of the situation. *Id.*

■ This Court concludes that the Michigan Court of Appeals' determination in this regard is consistent with federal law and a reasonable application of that law. First, the record is devoid of reliable evidence that Clay was in fact promised leniency for providing testimony at Petitioner's trial. At the evidentiary hearing on this issue, the prosecutor specifically testified that no promises were made to Clay in advance of Petitioner's trial. Second, the record reveals that the jury was well aware that Clay had reason to testify against Petitioner at trial. Defense counsel argued before the jury that Clay sought to benefit from his testimony. Petitioner has thus failed to establish a constitutional violation in this regard and is not entitled to habeas relief on this claim.

B. *Admission of Other Acts Evidence*

Petitioner next claims that he is entitled to habeas relief because the trial court erred in allowing testimony of his marijuana dealing into evidence. Respondent contends that this claim is barred by procedural default and is otherwise without merit.

■ Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94 (6th Cir.1991). In *Wainwright,* the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85, 97 S.Ct. 2497.

■ In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

■ Here, the Michigan Court of Appeals rendered the last reasoned opinion discussing this evidentiary issue. In dismissing Petitioner's challenge to the drug dealing evidence, the Court of Appeals relied upon a state procedural bar—Petition-

er's failure to object to the evidence at trial. *Pearl*, 2000 WL 33529751 at *2–*3. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir.1989). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir.1991). In this case, the Michigan Court of Appeals dismissed Petitioner's other acts evidence claim based upon procedural default—his failure to object at trial.

■ A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546; *Gravley v. Mills*, 87 F.3d 779, 784–85 (6th Cir.1996). Even assuming that Petitioner can establish cause for his failure to object to the evidence, however, he cannot establish prejudice.

■ It is well-established, however, that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir.1993). Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir.1994). In this case, that the admission of the disputed evidence did not violate Michigan law nor deny Petitioner a fair trial. As noted by the Michigan Court of Appeals, *see Pearl*, 2000 WL 33529751 at *3, the testimony describing Petitioner's marijuana dealings was relevant to the issues presented at trial. Such evidence was properly admitted as evidence of Petitioner's motive and intent in the shooting death of Juan de la Rosa. *See* Mich. R. Evid. 404(b).

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Murray*, 477 U.S. at 496, 106 S.Ct. 2639. " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Petitioner has made no such showing in this case. Petitioner's other acts evidence claim is therefore barred by procedural default, is otherwise without merit, and does not warrant habeas relief.

### C. *Ineffective Assistance of Counsel*

Petitioner also claims that counsel was ineffective for failing to object to the admission of the other acts evidence and

other evidence that was more prejudicial than probative. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687, 104 S.Ct. 2052. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690, 104 S.Ct. 2052. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689, 104 S.Ct. 2052. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* In *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the United States Supreme Court observed that "an analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair

or unreliable is defective." The United States Court of Appeals for the Sixth Circuit has thus concluded that a reviewing court should focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir.1996). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 1311–12 (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052).

The Michigan Court of Appeals considered this issue and found that counsel was not deficient for failing to make objections at trial because the other acts evidence was admissible and no deal existed regarding Anthony Clay's testimony. The court also found that Petitioner had failed to establish that there was a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different. *Pearl*, 2000 WL 33529751 at *3.

 Having reviewed the record, this Court finds that the Michigan Court of Appeals' determination in this regard is consistent with *Strickland* and constitutes a reasonable application thereof. Because Petitioner's evidentiary and prosecutorial misconduct/*Brady* claims are without merit, he cannot establish that trial counsel was ineffective under the standard set forth in *Strickland, supra.* Petitioner is thus not entitled to relief on this claim.

### D *Admission of Victim's Photograph*

Petitioner next claims that he is entitled to habeas relief because the trial court admitted a photograph of the victim on the autopsy slab with plastic garbage bags around his head and cords tied around his neck. As noted, it is well-established that

alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *Estelle,* 502 U.S. at 67–68, 112 S.Ct. 475; *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1354 (6th Cir.1993); *see also Olsen v. McFaul,* 843 F.2d 918, 933 (6th Cir.1988) (such claims are almost always rejected as grounds for granting a writ of habeas corpus). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *Oliphant v. Koehler,* 594 F.2d 547, 555 (6th Cir.1979). Only where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders,* 34 F.3d 352, 356 (6th Cir.1994).

Petitioner alleges that admission of the victim's photograph was highly prejudicial and violated his constitutional right to a fair trial. The Michigan Court of Appeals considered this issue as a matter of state evidentiary law and concluded that no abuse of discretion occurred, noting that the photograph was properly offered to show the condition of the victim's body, to assist the jurors in assessing credibility, and to reflect Petitioner's intent. *Pearl,* 2000 WL 33529751 at *4.

 This Court agrees with the Michigan Court of Appeals that the trial court did not err in admitting the photograph of the victim, as it provided the jury with a more accurate depiction of the victim and was relevant to Petitioner's intent. Furthermore, the United States Court of Appeals for the Sixth Circuit has recently held that a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude. *See Cooey v. Coyle,* 289 F.3d 882, 893–94 (6th Cir.2002) (citing *Gerlaugh v. Stewart,* 129 F.3d 1027, 1032 (9th Cir.1997), for proposition that such photographs do not raise the "spectre of fundamental fairness such as to violate federal due process of law"). This Court thus concludes that the admission of the victim's photograph in this case did not so infect the entire trial or prejudice Petitioner so as to constitute a violation of due process. Petitioner is not entitled to relief on this claim.

### E. *Prosecutorial Misconduct*

Petitioner next claims that he is entitled to habeas relief because the prosecution argued facts not in evidence. Specifically, Petitioner seems to complain that the prosecution erred in stating that Petitioner forced Anthony Clay and David Neelis to shoot de la Rosa and in stating that three of the bullets found in the victim's body were "conclusive with bullets found" at Petitioner's home. Respondent contends that this claim is barred by procedural default and is otherwise without merit.

As noted, habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright,* 433 U.S. at 85, 97 S.Ct. 2497. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. *See Harris,* 489 U.S. at 263–64, 109 S.Ct. 1038; *Ylst,* 501 U.S. at 803–05, 111 S.Ct. 2590.

Here, the Michigan Court of Appeals rendered the last reasoned opinion discussing this issue. In dismissing Petitioner's prosecutorial misconduct claim, the court relied upon a state procedural bar— Petitioner's failure to object at trial.

*Pearl*, 2000 WL 33529751 at *5. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Coleman*, 501 U.S. at 750–51, 111 S.Ct. 2546. Moreover, the court did not waive the procedural default by reviewing the claim by looking beyond the default to determine if there were circumstances warranting review on the merits. *Paprocki*, 869 F.2d at 285; *see also McBee*, 929 F.2d at 267.

 A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546. Even assuming that Petitioner can establish cause for his failure to object to the prosecutorial comments at issue, however, he cannot establish prejudice.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Factors to be considered in weighing the extent of a prosecutor's misconduct are:

> the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1355–56 (6th Cir.1993)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Id.* (citations omitted).

The Michigan Court of Appeals considered these matters and found that the prosecutor erred in stating that Neelis shot de la Rosa after Petitioner did and that the prosecutor misspoke in referring to the ballistics evidence as "conclusive" rather than "consistent," but concluded that the errors did not result in manifest injustice. *Pearl*, 2000 WL 33529751 at *5. Having reviewed the record, this Court agrees. The prosecution's comments were isolated in nature and were not likely to mislead the jury to any significant degree. Furthermore, given the evidence presented at trial, it cannot be said that any of the disputed comments rendered Petitioner's trial fundamentally unfair. Petitioner is thus not entitled to habeas relief on this claim.

### F. *Jury Instruction Claims*

Petitioner next claims that he is entitled to habeas relief because the trial court failed to instruct the jury on reckless use of a firearm and accident. Respondent asserts, as the Michigan Court of Appeals concluded, that these claims are without merit as neither instruction was warranted based upon the evidence. *See Pearl*, 2000 WL 33529751 at *6–7.

### 1. *Reckless Use of a Firearm*

 Under Michigan law, a defendant may request and receive instructions on necessarily included lesser offenses without regard to the evidence, and on cognate lesser included offenses if the evi-

dence would support a conviction on the lesser included offense. *See People v. Beach,* 429 Mich. 450, 462, 418 N.W.2d 861, 866 (1988). Careless, reckless, or negligent use of a firearm causing death is a cognate lesser offense of second-degree murder. *See People v. Rochowiak,* 416 Mich. 235, 242, 330 N.W.2d 669 (1982) (citing *People v. Jones,* 395 Mich. 379, 389–90, 236 N.W.2d 461 (1975)). The trial court is required to give an instruction for a cognate lesser included offense if: (1) the principal offense and the lesser offense are of the same class or category, and (2) the evidence adduced at trial would support a conviction of the lesser offense. *See People v. Hendricks,* 446 Mich. 435, 444, 521 N.W.2d 546 (1994). There must be more than a modicum of evidence; there must be sufficient evidence that the defendant could be convicted of the lesser offense. *People v. Pouncey,* 437 Mich. 382, 387, 471 N.W.2d 346 (1991). Thus, as a matter of state law, the trial court was not required to give the requested instruction unless there was sufficient evidence to support such a conviction. In this case, the evidence revealed that Petitioner intentionally discharged the gun, negating an instruction on the careless, reckless, or negligent use of a firearm. *See, e.g., People v. Williams,* 143 Mich.App. 574, 591, 374 N.W.2d 158 (1985).

Furthermore, even assuming that the trial court erred as a matter of state law, Petitioner is not entitled to relief from this Court. A question concerning a perceived error of state law rarely serves as a basis for federal habeas corpus relief; and does so only when the petitioner is denied fundamental unfairness. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions"). In *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.1990), the United States Court of Appeals for the Sixth Cir-

cuit ruled that a state court's failure to instruct the jury on a lesser included offense in a noncapital criminal case is not such a "fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." Additionally, given the evidence at trial, including Petitioner's own testimony, there was sufficient evidence for the jury to find Petitioner guilty of second-degree murder. Petitioner is thus not entitled to relief on this claim.

### 2. *Accident*

Under Michigan law, jury instructions must include all elements of the charged offense and must not exclude material issues, defenses, and theories. *See People v. Bartlett,* 231 Mich.App. 139, 143, 585 N.W.2d 341 (1998). This Court, however, is not convinced that the trial court erred in refusing to instruct the jury on the theory of accident. Petitioner's own testimony, as well as that of Anthony Clay, established that Petitioner intentionally shot at de la Rosa and that the gun did not fire by accident. Further, even if the Court erred as a matter of state law, Petitioner is not entitled to relief as he has not shown that the failure to instruct the jury on accident deprived him of a fair trial. Any error in instructing the jury was harmless given the testimony establishing Petitioner's guilt of second-degree murder. Petitioner is not entitled to habeas relief on this claim.

### G. *Use of Shackles in Courtroom*

Lastly, Petitioner claims that he is entitled to habeas relief because the trial court denied him his right to a fair trial by allowing his legs to be shackled during his trial. Respondent asserts that this claim is without merit.

The rule that a prisoner brought into court for trial is entitled to appear free from all bonds or shackles is an important component of a fair and impartial trial. Shackles on a defendant are generally not permitted except to prevent the escape of the accused, to protect people in the courtroom, and to maintain order during the trial. *See Kennedy v. Cardwell*, 487 F.2d 101, 110–111 (6th Cir.1973); *Woodards v. Cardwell*, 430 F.2d 978, 982 (6th Cir.1970) (citing *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)). The use of handcuffs and shackles is ordinarily left to the sound discretion of the trial court. *Id.*

The Michigan Court of Appeals in this case was "disturbed" by Petitioner's leg shackling and found that the trial court abused its discretion in refusing to remove the leg chains during trial. Nonetheless, the court concluded that Petitioner was not prejudiced by the shackling because he had failed to show that the jury was able to see his leg chains, Petitioner took the stand while the jury was out of the courtroom, and the jury was aware that Petitioner was in jail pending trial. *See Pearl*, 2000 WL 33529751 at *7–8.

■ Having considered the matter, this Court finds that the Michigan Court of Appeals' determination is consistent with federal law and constitutes a reasonable application of that law. Although the leg shackling of Petitioner appears to have been unwarranted by his conduct, Petitioner has not established that he was sufficiently prejudiced so as to warrant intervention by this Court. Petitioner has not presented evidence to show that the jurors saw the shackles, which is fatal to his claim. *See Ghent v. Woodford*, 279 F.3d 1121, 1132 (9th Cir.2002). Moreover, given the overwhelming evidence against Petitioner, the Court cannot conclude that the use of restraints was prejudicial or had any influence or effect on the jury's ver-

dict. Petitioner is thus not entitled to relief on this claim.

## V. *Conclusion*

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented. Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**