**Alexander M. GARDNER, Petitioner,**

v.

**Robert KAPTURE, Respondent.**

**No. CIV. 02–CV–70177–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

April 1, 2003.

Alexander Gardner, Adrian, MI, pro se.

Brenda E. Turner, Laura G. Moody, Mich. Dept. of Atty., Gen, Habeas Corpus Div., Lansing, MI, for respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

STEEH, District Judge.

Petitioner Alexander Gardner, a state prisoner currently confined at the Hiawatha Correctional Facility in Kincheloe, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of arson of a dwelling house and assault with a deadly weapon following a jury trial in the Genesee County Circuit Court in 1995 and was sentenced as a fourth habitual offender to concurrent terms of ten to twenty years imprisonment and two to four years imprisonment in 1996. In his pleadings, Petitioner raises claims concerning the racial composition of his jury, the effectiveness of trial and appellate counsel, and the sufficiency of the evidence. For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

### I. *Facts*

Petitioner's convictions arise from the arson of a house and a related assault in Flint, Michigan on July 31, 1995. Three witnesses who testified at trial identified Petitioner as the perpetrator of these crimes. Lavern Onstott testified that Petitioner had hit him with a tire iron and tried to rob him of his pension check earlier that day. Two men, Randall Lee and Mark Coker, came to his aid and fought with Petitioner. During their struggle, Petitioner was cut. Several hours later, Petitioner returned to the house, broke a window, and threw gasoline on Lee. Soon the entire house was in flames. Onstott testified that his van was also burned. Onstott admitted drinking and smoking crack cocaine on the day of the incident.

Randall Lee testified that Petitioner broke into the house through a window and tried to rob Onstott. He and Mark Coker helped Onstott and then went to a party to buy beer. Petitioner returned to the house while they were playing cards. Petitioner had a gas can and said that he was going to burn them up or kill them. Petitioner threw gasoline on him and there was gasoline everywhere. Lee testified that he saw Petitioner light the fire, although at the preliminary examination he said that he did not see Petitioner light the gasoline. Lee admitted drinking wine and liquor on the day of the fire. He also said that he left the scene and did not contact police about the fire because he had been convicted and sentenced for breaking and entering the previous month and there was a warrant out for his arrest.

Mark Coker testified that Petitioner caused trouble at the house earlier in the day. He returned later and threw gasoline at the house and through the window. Coker saw Petitioner, then saw a spark and the house became engulfed in flames. He saw Petitioner with a lighter in one hand while he was throwing gasoline with the other hand. Coker testified that he was hit with gasoline and thought that Petitioner was going to set him on fire. Coker admitted drinking and smoking crack cocaine on the day of the fire. He also stated that he did not provide police with a statement about the incident until he was picked up on another case.

Firefighters who responded to the fire and conducted the investigation testified that they recovered a gasoline can from the scene, but the can was not processed for fingerprints. They believed that an accelerant was used to start the fire based upon the speed in which it spread through the house.

Petitioner's mother also testified at trial. She stated that Petitioner came home around 11:00 p.m. on the night of the fire. He was intoxicated and had cuts on his body. The next day he told her that two people had tried to kill him.

At the close of trial, the jury convicted Petitioner of arson of a dwelling house and assault with a dangerous weapon, but acquitted him on a charge of assault with intent to commit great bodily harm. The trial court subsequently sentenced him as a fourth habitual offender to concurrent terms of ten to twenty years imprisonment and two to four years imprisonment.

II. *Procedural History*

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting that: (1) the prosecutor engaged in misconduct by failing to instruct a witness not to mention Petitioner's prior incarceration, (2) he was denied the effective assistance of trial counsel because counsel failed to object to admission of evidence regarding Petitioner's prior incarceration, and (3) the trial court erred in denying his motion for directed verdict because the verdict was against the great weight of the evidence. The Michigan Court of Appeals affirmed Petitioner's convictions in a per curiam decision. *People v. Gardner*, No. 192275, 1997 WL 33349371 (Mich.App. April 22, 1997) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court raising the same issues, as well as a claim that the prosecutor systematically excluded black venire persons from the jury pool selection process, leaving Petitioner with an all-white jury. The Michigan Supreme Court denied leave to appeal in a standard order. *People v. Gardner*, 456 Mich. 941, 575 N.W.2d 557 (1998).

On April 15, 1998, Petitioner filed an initial petition for writ of habeas corpus with this Court alleging claims of prosecutorial misconduct, ineffective assistance of counsel, insufficient evidence, and uncon-

stitutionally selected and impaneled petit jury. United States District Judge Victoria A. Roberts denied the petition on the merits. *Gardner v. Burke,* No. 98–CV–10108–BC (E.D.Mich. Sept. 2, 1999). Petitioner appealed and the United States Court of Appeals for the Sixth Circuit vacated that decision and remanded the case for an order of dismissal without prejudice based on Petitioner' failure to exhaust state court remedies. *Gardner v. Burke,* No. 99–2051 (6th Cir. Aug. 7, 2000). Judge Roberts issued an opinion and order dismissing the case without prejudice on August 25, 2000.

On September 13, 2000, Petitioner filed a motion for relief from judgment and supplemental pleadings with the state trial court, asserting that: (1) the jury was unconstitutionally selected and impaneled, (2) he was denied the effective assistance of trial and appellate counsel, and (3) the evidence was insufficient to support his convictions. The trial court denied the motion. *People v. Gardner,* No. 95–053065–FH (Saginaw Co. Cir. Ct. Sept. 25, 2000). Petitioner filed an application for leave to the Michigan Court of Appeals, which was denied for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Gardner,* No. 230309 (Mich. Ct.App. April 27, 2001). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied on the same basis. *People v. Gardner,* 465 Mich. 934, 638 N.W.2d 753 (2001).

Petitioner filed the instant petition for writ of habeas corpus on February 1, 2002, alleging the same three grounds for relief presented in his state court motion for relief from judgment. Respondent filed an initial answer to the petition on August 14, 2002 asserting that it should be dismissed based upon procedural default, but did not address the merits of the claims. Petitioner filed a reply to the answer asserting

ineffective assistance of counsel (his second habeas claim) as cause to excuse his default. On January 31, 2003, in response to an order of the Court, Respondent submitted a supplemental answer to the petition contending that Petitioner's claims lack merit.

III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court undertook a detailed analysis of the correct standard of review under the AEDPA. According to the Court:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established

Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13, 120 S.Ct. 1495 (O'Connor, J., delivering the opinion of the Court on this issue).

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 411, 120 S.Ct. 1495. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. In determining what constitutes clearly established federal law,

therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

Lastly, § 2254(e)(1) requires that the Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. *Analysis*

### A. *Procedural Default*

Respondent asserts that Petitioner's claims are barred by procedural default and do not warrant habeas relief. Petitioner first properly presented these claims to the state courts in his motion for relief from judgment. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal for failing "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

 Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes,* 433 U.S. 72, 85–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright,* 433 U.S. at 85, 97 S.Ct. 2497; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir.2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas

review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

■ Here, the Michigan Supreme Court relied upon Michigan Court Rule 6.508(D) in denying Petitioner leave to appeal. That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D). The state court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones,* 238 F.3d 399, 407 (6th Cir.2000). Although the Michigan Supreme Court did not fully explain its decision, the record indicates that Petitioner failed to properly raise these claims on direct appeal of his convictions despite the opportunity to do so.

■ A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Gravley v. Mills,* 87 F.3d 779, 784–85 (6th Cir.1996). Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Even assuming that Petitioner can establish cause to excuse his default, however, he cannot demonstrate actual prejudice. As set forth below, Petitioner's defaulted claims lack merit and do not warrant habeas relief.

■ Moreover, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. Petitioner has made no such showing. Petitioner's habeas claims are thus barred by procedural default, are otherwise without merit (as discussed *infra* ), and do not warrant relief.

B. *Jury Composition Claim*

Petitioner first claims that he is entitled to habeas relief because his jury was unconstitutionally selected and impaneled in violation of his due process and equal protection rights. Petitioner, an African-American, alleges that the State systematically excluded African–American venire persons during the jury selection process leaving him with an all-white jury.

■ Although a criminal defendant has no right to a *petit* jury composed in whole or in part of persons of his own race,

he does have the right to be tried by a jury whose members are selected by non-discriminatory criteria. *See Powers v. Ohio,* 499 U.S. 400, 404, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Taylor v. Louisiana,* 419 U.S. 522, 527–28, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). A defendant may not challenge the makeup of a jury merely because no members of his race are on a jury, but must prove that his race has been systematically excluded. *See Apocada v. Oregon,* 406 U.S. 404, 413, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); *United States v. Mack,* 159 F.3d 208, 219 (6th Cir.1998); *Johnson v. Hofbauer,* 159 F.Supp.2d 582, 598–99 (E.D.Mich.2001). To establish a prima facie violation of the fair cross-section requirement, a criminal defendant must show that: 1) the group alleged to be excluded is a distinctive group in the community; 2) the representation of this group in the venire from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *See Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

 Petitioner alleges that, based on his own observations, there was only one African–American in his jury pool, even though African–Americans comprised between 19% and 21% of the population in Genesee County in the 1990s. Even assuming that Petitioner's allegations are sufficient to meet the first two requirements, he has made no showing, beyond his own conclusory assertions, that this underrepresentation is the result of systematic exclusion. Petitioner's failure to point to any evidence supporting a prima facie violation of the fair cross-section requirement defeats this claim. *See United States v. Allen,* 160 F.3d 1096, 1103–04 (6th Cir.1998) (no Sixth Amendment fair cross-section violation where defendants failed to meet second and third prongs of

prima facie case). "More than mere numbers must be provided to establish that African–Americans are systematically underrepresented in the [jury] venire." *United States v. Greene,* 971 F.Supp. 1117, 1128 (E.D.Mich.1997). The strength of the evidence of underrepresentation in the venire is only one factor to be considered in determining whether a prima facie violation of the fair cross-section requirement has been established. Factors such as the nature of the process by which jury lists are composed and the length of time of underrepresentation, together with the strength of the evidence that purports to establish unfair and unreasonable representation also need to be examined. *Id.* (*citing Ford v. Seabold,* 841 F.2d 677 (6th Cir.1988)). "[A] one-time example of underrepresentation of a distinctive group wholly fails to meet the systematic exclusion element" to establish a prima facie violation of the Sixth Amendment's requirement that jurors in criminal cases be drawn from a fair cross-section of the community. *McGinnis v. Johnson,* 181 F.3d 686, 690 (5th Cir.1999); *see also Greene,* 971 F.Supp. at 1128. Because Petitioner has presented no evidence that African–Americans were systematically excluded from jury service in Genesee County or that the selection process was not facially neutral, he is not entitled to relief on this claim.

 Petitioner also seems to allege that the prosecutor improperly exercised peremptory challenges to exclude African–American jurors from his jury. The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *See Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To established a prima facie case of purposeful discrimination in the selection of a *petit* jury solely based

upon the prosecutor's exercise of peremptory challenges, a defendant must show that he is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury. The defendant must also show that other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the petit jury on account of their race. Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Id.* at 96–97, 106 S.Ct. 1712.

Once the defendant makes a prima facie showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97, 106 S.Ct. 1712. A "race neutral" explanation is one based upon something other than the juror's race. The issue is the facial validity of the prosecutor's explanation. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The defendant bears the final burden of proving purposeful discrimination. *Batson,* 476 U.S. at 98, 106 S.Ct. 1712.

In this case, Petitioner's *Batson* claim is belied by the record. Petitioner states that only one African–American male, identified as Alexander, was in the jury pool. *See* Petition, Ground One. The transcript of the jury voir dire indicates that the trial court chose to excuse Mr. Virgil Alexander because he indicated that he would have a problem judging the case fairly because he had an immediate family member who was involved with drugs. *See* 12/1/95 Transcript, pp. 40–41. Thus, the record indicates that the court excused Mr. Alexander for cause—the prosecutor did not use a peremptory challenge to dismiss him. The record also reveals that the prosecutor only exercised three peremptory challenges—Ms. White, Mr. King, and Mr. Meier. *Id.* at 33, 49–50, 56. Petitioner does not allege that these individuals were African–American, let alone show that they were improperly challenged. In fact, it is likely that the prosecutor sought to excuse Mr. King because he had previously sat on a jury which had acquitted a criminal defendant. *Id.* at 49. Additionally, the prosecutor only exercised one challenge for cause to excuse a juror whose home had burned down several years earlier and who had been subject to an arson investigation. Given these circumstance, Petitioner has failed to establish that the prosecutor violated his constitutional rights during the jury selection process. Petitioner is thus not entitled to relief on this claim.

### C. *Ineffective Assistance of Counsel Claims*

Petitioner relatedly claims that trial and appellate counsel were ineffective for failing to raise the jury composition issue at trial and on appeal. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687, 104 S.Ct. 2052. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were

"outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690, 104 S.Ct. 2052. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689, 104 S.Ct. 2052. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* In *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the United States Supreme Court observed that "an analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." The United States Court of Appeals for the Sixth Circuit has thus concluded that a reviewing court should focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 1311–12 (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052).

▮▮▮ Given the Court's determination that Petitioner's jury composition claim lacks merit, Petitioner cannot satisfy the prejudice prong of the *Strickland* analysis for his ineffective assistance of counsel claims. *See, e.g., United States v. Cooke,* 110 F.3d 1288, 1301–02 (7th Cir.1997); *Wharton–El v. Nix,* 38 F.3d 372, 377 (8th Cir.1994). Accordingly, habeas relief as to those claims must be denied. To the extent that Petitioner asserts that appellate counsel was ineffective for failing to preserve oral argument on appeal by filing a timely brief, he also fails to establish prejudice. The record indicates that the prosecution was also denied oral argument, and the court addressed the appellate claims on their merits. Petitioner is thus not entitled to habeas relief on his ineffective assistance of counsel claims.

### D. *Sufficiency of the Evidence Claim*

Lastly, Petitioner claims that the evidence was insufficient to support his convictions. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *see also Warren,* 161 F.3d at 360.

▮▮▮ Under Michigan law, the elements of arson of a dwelling house are that: (1) a dwelling house was burned, (2) by, or at the urging of, or with the assistance of the defendant, and (3) the fire was willfully or maliciously set. *People v. Lindsey,* 83 Mich.App. 354, 355, 268 N.W.2d 41 (1978). The elements of assault with a dangerous weapon are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable fear or apprehension of an immediate battery. *People v. Lawton,* 196 Mich.App. 341, 349, 492 N.W.2d 810 (1992).

▮▮▮ In this case, the trial testimony of Lavern Onstott, Randall Lee, and

Mark Coker established that Petitioner threw gasoline in the house and on Lee, threatened to burn Lee and the house, lit the fire, and burned the house. Petitioner's insufficiency of evidence claim essentially challenges the credibility and weight to be accorded certain testimony and pieces of evidence. Such determinations, however, are not matters for federal habeas review. *See Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). In *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983), the United States Court of Appeals for the Sixth Circuit explained: "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." The trial testimony, as set forth *supra*, demonstrates that the prosecution presented sufficient evidence to support Petitioner's convictions. Habeas relief is not warranted on this claim.

## V. *Conclusion*

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented. Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**