**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0192n.06
Filed: March 16, 2005
File Name: 05a0192n.06
Filed: March 15, 2005

**No. 04-1499**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JIMMY QUENTIN GREEN, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; EDGAR, District Judge.[*]

SUTTON, Circuit Judge. Jimmy Green challenges his conviction and 97-month sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Because we conclude that the trial court properly admitted 911 calls into evidence (because the defendant had an opportunity to cross-examine the caller) and properly admitted a police incident report into evidence (because the defendant opened the door to its admission), we affirm his conviction. Because, in the aftermath of *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005), we conclude that his

---

[*]The Honorable R. Allan Edgar, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

sentence constituted plain error under our circuit's decision in *United States v. Oliver*, 397 F.3d 369, (6th Cir. 2005), we vacate his sentence and remand for resentencing.

I.

This case stems from an altercation between Green and his wife, Lakesha Green, in their home on November 15, 2002. At 7:43 p.m. that evening, Lakesha called 911, then promptly hung up the phone when the emergency dispatcher answered it. In accordance with the procedures of the Inkster, Michigan, police station, the 911 dispatcher, Christina Marshall, called the number back at 7:45 p.m. and reached Lakesha, who was crying and explained that she had just had an argument with her husband. Lakesha did not ask the police to come to the house, and the conversation ended. At 7:53 p.m., however, Lakesha called again. She first talked to 911 dispatcher Dale Massa and requested a police officer, "[b]ecause I am scared of my husband." JA 94. She repeated that "he made me very scared" and claimed that he had assaulted her. *Id.* She stated that she wanted a police officer to stay at her home "while I get some stuff together [be]cause I'm scared." JA 95. Massa transferred the call to Marshall, and Lakesha repeated, "I'm just scared if he come[s] back." *Id.* She then revealed that "[h]e took a gun and shot it in the house and got me really scared." *Id.* She added that he shot the gun "[a]t the front door" while "calling me bitches and stuff." JA 97.

At 8:05 p.m. that night, police officers Jeffrey Twardzik and Shawn Vargo arrived at the home. They found Lakesha "[e]xtremely distraught, scared, crying, sobbing . . . very upset." JA 231. Lakesha told the officers that Green had left the home about 10 to 15 minutes before they

arrived.  She explained to the officers that she and her husband had started arguing at about 4 p.m. and that Green had fired the shot at about 5 p.m.  The officers found a fired bullet lodged in the drywall above the front door and noticed drywall dust on the floor below.  According to Officer Vargo's Incident Field Report, Lakesha reported that Green at one point "grabbed [her] and threw her on the couch and began to choke her not allowing her to get up.  [Green] then retrieved a Glock 40 out of his pocket and stated to the victim, 'Do you think this is a f—ing game?'"  JA 98.

Later that night, the officers found Green at a nearby church, where they arrested him.  They recovered a Glock 40 from his car loaded with the same kind of ammunition that they had found embedded in the drywall of the Greens' home.  A federal grand jury indicted Green on February 6, 2003, for knowingly and unlawfully possessing a firearm that had traveled in interstate commerce in violation of 18 U.S.C. § 922(g), after which he pleaded not guilty.  A three-day jury trial was held beginning on December 2, 2003, and the jury returned a guilty verdict on the charge.

At sentencing, the district court gave Green a four-point sentencing enhancement because he had fired the gun in the course of threatening his wife.  *See* U.S.S.G. § 2K2.1(b)(5) (applicable "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense").  In response to Green's objection to the enhancement, the district court said:  "Well, both of the objections are overruled and you have my reservations, especially about the felony firearm."  JA 365.  The court sentenced Green to 97 months, the lowest available sentence within the applicable 97 to 120 month guideline range.

II.

Green raises two evidentiary challenges to his conviction—that the district court wrongly admitted (1) the tapes and transcripts of Lakesha Green's 911 calls and (2) an Incident Field Report completed by police officers after responding to the calls. We review evidentiary rulings for an abuse of discretion. *General Electric Co. v. Joiner*, 522 U.S. 136, 141–42 (1997); *United States v. Price*, 329 F.3d 903, 905 (6th Cir. 2003). In this instance, the district court did not abuse its discretion in admitting either piece of evidence.

In challenging the admission of the 911 tapes (and transcripts), Green argues that they do not satisfy the excited-utterance and present-sense-impression exceptions to the hearsay rule because the statements were made several hours after the altercation. As an initial matter, Green's time line does not square with the evidence. It is true that Green fired the shot at 5:00 p.m. and that Lakesha did not make her first 911 call until 7:43 p.m. But when the officers arrived at 8:05 p.m., Lakesha noted that Green had left "10 to 15 minutes" earlier—presumably immediately before the first 911 call. The factual premise of Green's argument, in short, does not appear to be true. But even if we are wrong and even if the altercation ended earlier in the evening, we have held that the trauma and anxiety prompted by a spousal assault—which form the predicate for calling something an excited utterance—do not suddenly dissipate when the assailant leaves the scene. *See, e.g.*, *United States v. Baggett*, 251 F.3d 1087, 1090 n.1 (6th Cir. 2001) (finding statements were excited utterances when offered several hours after the last of three separate spousal beatings over a three-day period).

Also unavailing is Green's claim that the admission of the 911 tapes and transcript violated his rights under the Confrontation Clause as interpreted in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). In holding that "testimonial" out-of-court statements offered against the accused to establish the truth of the matter asserted are not admissible under the Confrontation Clause, *Crawford* "reiterate[s] that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior *testimonial* statements." *Id.* at 1369 n.9 (emphasis added). In this instance, Lakesha Green testified at the trial, which establishes that she was available for cross-examination by Jimmy Green—*see, e.g.*, *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (finding no Confrontation Clause violation because the declarant "did testify at trial and therefore was available for cross-examination" by the defendant)—and accordingly defeats his Confrontation Clause claim. As a result, we need not determine whether her 911 statements were "testimonial" in nature.

Green's objection to the admission of the Incident Field Report (written by Officer Vargo after his conversations with Lakesha Green on the night of the assault) also comes up short. Green himself first elicited statements from this report after stipulating to its admissibility during his cross-examination of Officer Jeffrey Twardzik. Having decided to use the report himself during his cross-examination of Officer Twardzik, Green cannot now claim that it was inadmissible hearsay. In response, Green argues that one of the most damaging parts of the report—that Green "grabbed the victim and began to choke her, not allowing her to get up," JA 247—was brought up by Officer Twardzik on cross-examination and was "non-responsive, highly inflammatory and apparently

calculated to prejudice the jury." Green Reply Br. at 2. But Green did not object when the statement was made and at any rate the fact remains that Green brought this risk upon himself by initially cross-examining Officer Twardzik about the report and by stipulating to its admissibility.

III.

Turning to his 97-month sentence, Green argues that the district court erred by giving him a four-point enhancement under U.S.S.G. § 2K2.1(b)(5), and that the resulting sentence violates his Sixth Amendment rights under *Booker*. While the district court correctly applied the enhancement to the facts of this case, we nonetheless vacate the sentence and remand the case for resentencing in light of *Booker*.

The § 2K2.1(b)(5) enhancement applies "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." A "felony offense" is "any offense (federal, state or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." § 2K2.1, cmt. n.4. Michigan law provides that a person is guilty of felonious assault with a dangerous weapon—punishable by imprisonment for more than one year, *see* Mich. Comp. Laws Ann. § 750.82(1)—if the person who assaults another with a dangerous weapon has the intent to injure or place the victim in reasonable fear or apprehension of an immediate battery. *See Gardner v. Kapture*, 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003) (citing *People v. Lawton*, 492 N.W.2d 810 (Mich. Ct. App. 1992)). Here, as the district court permissibly

concluded, the evidence showed that Green feloniously assaulted his wife when he discharged his gun during their argument and that he intended to scare her by firing the gun.

In response, Green argues (1) that Lakesha's inconsistent testimony during the trial—to the effect that Green had only accidentally discharged his weapon—precludes a factual finding that Lakesha's fear-laden statements to the 911 dispatcher were accurate and (2) that her testimony should not have been credited in view of her bias toward her husband and her acknowledgment that she had discussed her testimony with defense counsel nine days before testifying. Having had a ring-side view of the proceedings below, the district court acted well within its discretion in choosing which version of these events to credit.

By way of a letter of supplemental authority, Green also argues that his sentence violates *Booker*. Green did not make a Sixth Amendment objection to his sentence below, meaning that he may obtain relief at this stage only if he can establish plain error. *See* Fed. R. Crim. P. 52(b). Under the familiar four-part plain-error test, we will vacate a sentence if it rests upon (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 735–37 (1993); *see also United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005).

Green readily satisfies the first two prongs of this test. The district court enhanced Green's sentence after making factual findings about the use of a gun during the assault and did so using a preponderance-of-the-evidence standard. The enhancement led to a new Sentencing Guidelines range

of 97 to 120 months and replaced the sentencing range of 63 to 78 months that would have existed without the enhancement. The judicial fact-finding underlying this sentence violates *Booker*. And while the district court's sentence preceded *Booker* and followed the established sentencing procedures of the time, it is enough that the *Booker* violation was apparent at the time of appellate consideration to establish that the error was plain. *See Johnson v. United States*, 520 U.S. 461, 468 (1997).

While there may be situations in which *Oliver* does not require a remand under the last two prongs of the *Olano* test, this is not one of them. There were several material fact disputes affecting the appropriate Guideline range. The district court sentenced Green to the lowest possible sentence in the applicable range. And, in the course of sentencing Green, the district court commented that "you have my reservations, especially about the felony firearm." JA 365. *See Oliver* at 379–81; *United States v. Gonzalez*, No. 03-4279, 2005 U.S. App. LEXIS 3154, at *6 (6th Cir. 2005) (noting that the inference that a district court might, in its post-*Booker* discretion, impose a sentence lower than the applicable Guideline range "is particularly strong . . . where [the court] sentenced the defendant at the bottom of the Guideline range").

Finally, Green argues in a supplemental pro se brief that he was not a convicted felon for purposes of § 922(g) because his rights had been restored following his past convictions. However, Green and the government entered into a signed stipulation that "prior to November 15, 2002, the defendant had been convicted of a felony offense, knew that he had been convicted of a felony, had not had his conviction expunged nor his rights restored, and that the Government could prove this

beyond a reasonable doubt." Green and his counsel signed the stipulation, dated November 22, 2003.

The government read the stipulation into the record at trial, and Green did not object. In light of this

stipulation, Green's argument is not well taken.

IV.

For these reasons, we affirm Green's conviction, vacate Green's sentence and remand for

resentencing.