Gerald WARREN, Petitioner–Appellant,

v.

David SMITH, Respondent–Appellee.

No. 97–1672.

United States Court of Appeals,
Sixth Circuit.

Submitted Nov. 5, 1998.

Decided Nov. 23, 1998.

Rehearing Denied Jan. 19, 1999.

**ON BRIEF:** Craig A. Daly, Detroit, Michigan, for Appellant. Vincent J. Leone, Office of Attorney General, Habeas Corpus Division, Lansing, Michigan, for Appellee.

Before: KEITH, KENNEDY, and NORRIS, Circuit Judges.

## OPINION

KENNEDY, Circuit Judge.

Petitioner, Gerald Warren, appeals the District Court's order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254 following state court convictions for assault with intent to commit murder, breaking and entering with intent to commit a felony, and assault with intent to rob while unarmed. We are asked to determine in this appeal whether sufficient evidence was presented in the state court proceedings to support petitioner's convictions on two counts of assault with intent to commit murder. Because we conclude that a rational jury could have inferred beyond a reasonable doubt that petitioner was aware that his accomplice possessed an intent to kill the victims, the District Court order denying Warren's petition is **AFFIRMED**.

## I.

Petitioner's state court convictions arise out of events which occurred on the evening of November 8, 1986, in Hamtramck, Michigan. At approximately 8:00 p.m. that evening, petitioner's accomplice [1] entered the first floor flat of Peter Bosyk, age seventy-six, and Janina Pomoska, age eighty. The accomplice struck Mr. Bosyk to the ground, bound his arms and legs, and beat him in the chest, ribs, and shoulders. Two to three minutes later, petitioner entered the home, witnessed his accomplice assaulting Mr. Bosyk, and proceeded to search the other rooms of the house while his accomplice covered Bosyk's face with duct tape found in the victims' kitchen. When Ms. Pomoska entered the kitchen, Warren handcuffed her and then petitioner's accomplice struck her, bound her limbs, and covered her head with duct tape as well. Petitioner observed both victims subdued when he entered the kitchen to retrieve a screwdriver. When police arrived at the scene, they discovered Bosyk and Pomoska lying on the living room, struggling to breathe. Officer Richard Olkowski cut a hole in the duct tape covering the victims' mouths and then removed the tape. On the floor, approximately three-feet from the victims, police discovered a blue bag containing duct tape, some plastic ties, a pair of pliers, and a set of handcuffs.[2]

---

1. Because petitioner's accomplice eluded police at the crime scene, he remains unnamed.

2. Petitioner testified that, in addition to the items found by police, he and his accomplice brought with them two screwdrivers, small chains, and a second set of handcuffs.

Petitioner was apprehended at the scene and convicted following a jury trial in 1987 on two counts of assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83, breaking and entering with intent to commit a felony, in violation of Mich. Comp. Laws § 750.110, and assault with intent to rob while unarmed, in violation of Mich. Comp. Laws § 750.88. In an unpublished opinion, the Michigan Court of Appeals reversed petitioner's assault with intent to murder convictions because the trial judge erred in instructing the jury on the intent required for murder where the charge required a specific intent to kill. On retrial of the two counts in 1989, petitioner was again convicted and sentenced to concurrent terms of 25 to 50 years' imprisonment. Warren's convictions were upheld by the Michigan Court of Appeals on July 19, 1993. *See People v. Warren,* 200 Mich.App. 586, 504 N.W.2d 907 (Mich.Ct.App.1993).

Following the Michigan Supreme Court's denial of Warren's application for leave to appeal, Warren filed the instant petition for a writ of habeas corpus, on September 6, 1996, raising as error three claims: (1) petitioner was denied due process of law because his conviction for assault with intent to murder was not supported by sufficient evidence; (2) petitioner was denied his right of confrontation when the trial court denied his request for an interpreter to aid witness Bosyk; and (3) petitioner was denied due process as a result of prosecutorial misconduct during closing argument. On April 30, 1997, a magistrate judge issued a report and recommendation that the petition be dismissed. The District Court accepted the report and recommendation and dismissed the petition on June 9, 1997. While petitioner sought a certificate of appealability from the District Court as to all three issues raised in his petition, the court granted the certificate only as to the issue challenging the sufficiency of evidence supporting the assault with intent to commit murder convictions. On December 22, 1997, this Court denied petitioner's certificate of appealability as to all issues that were not certified by the District Court. We are thus presented in this appeal only with the issue of whether sufficient evidence was presented in the state court proceedings to support petitioner's convictions on the charges of assault with intent to commit murder.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), effective April 24, 1996, significantly changed the manner in which federal courts review habeas petitions. *See* 28 U.S.C. § 2254(d), (e)(1)(Supp.1997). The Supreme Court in *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), clarified that those changes apply to cases filed after April 24, 1996. *See id.* at 2068; *see also Groseclose v. Bell,* 130 F.3d 1161, 1164 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1826, 140 L.Ed.2d 962 (1998). Warren filed the petition at issue here on September 6, 1996, several months after the April 24 effective date of the AEDPA. Therefore, the provisions of the AEDPA, including the amended standard of review, apply to this case.

Pursuant to the amended provisions of § 2254(d), a writ of habeas corpus may not be granted unless the state court proceedings,

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2)(Supp.1997). Pursuant to subsection (1), a writ of habeas corpus may be granted if the court concludes that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing the petition to determine, pursuant to subsection (2), whether the decision was based on an unreasonable determination of facts, we presume correct the factual findings made by the state court, *id.* § 2254(e)(1); the petitioner may

rebut the presumption of correctness only with clear and convincing evidence. *Id.*

## III.

▉ In Michigan, the crime of assault with intent to commit murder requires proof of three elements: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Plummer,* 229 Mich.App. 293, 581 N.W.2d 753, 759 (Mich.Ct.App.1998), *appeal denied,* 581 N.W.2d 730 (Mich.1998); *People v. Hoffman,* 225 Mich.App. 103, 570 N.W.2d 146, 150 (Mich.Ct.App.1997), *appeal denied,* 583 N.W.2d 901 (Mich.1998). The second element, the intent to kill, does not equate with murder. *See People v. Taylor,* 422 Mich. 554, 375 N.W.2d 1, 7 (Mich.1985). Thus, an intent to kill for purposes of this offense may not be proven by an intent to inflict great bodily harm or a wanton and wilful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm.[3] *Id.* The specific intent to kill "may be proven by inference from any facts in evidence." *Hoffman,* 570 N.W.2d at 150; *see also People v. Davis,* 216 Mich.App. 47, 549 N.W.2d 1, 4 (Mich.Ct.App.1996). In determining intent, we may take into consideration

> the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declara-

tions prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.

*Taylor,* 375 N.W.2d at 8 (quoting *Roberts v. People,* 19 Mich. 401, 415–16 (1870)).

▉ Where the state seeks to convict an aider and abettor of the substantive offense of assault with intent to commit murder, the prosecution must establish that the aider and abettor "himself possess[ed] the required intent or participate[d] while knowing that the principal possessed the required intent." [4] *People v. Rockwell,* 188 Mich.App. 405, 470 N.W.2d 673, 676 (Mich.Ct.App.1991)(quoting *People v. Vicuna,* 141 Mich.App. 486, 367 N.W.2d 887, 891 (Mich.Ct.App.1985), *disapproved on other grounds by, People v. Dalessandro,* 165 Mich.App. 569, 419 N.W.2d 609 (Mich.Ct.App.1988)); *see also People v. Daniels,* 163 Mich.App. 703, 415 N.W.2d 282, 284 (Mich.Ct.App.1987)("it must be shown that the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement"). The aider and abettor's "specific intent or his knowledge of the principal's specific intent may be inferred from circumstantial evidence." *People v. Eggleston,* 149 Mich.App. 665, 386 N.W.2d 637, 639 (Mich.Ct.App.1986); *see also People v. Acosta,* 153 Mich.App. 504, 396 N.W.2d 463, 467 (Mich.Ct.App.1986). It is this second element of intent that petitioner asserts is lacking; Warren asserts that the prosecution did not prove beyond a reasonable doubt that

---

**3.** The State cites to *People v. Barrera,* 451 Mich. 261, 547 N.W.2d 280 (Mich.), *cert. denied,* —— U.S. ——, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996), to support its proposition that an intent to kill may be proven if the aider and abettor acted with wanton and wilfull disregard sufficient to support a finding of malice. The crime at issue in *Barrera,* however, was aiding and abetting felony-murder which permits conviction upon a finding that the principal "intended to kill, intended to cause great bodily harm or wantonly and willfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm." *Barrera,* 547 N.W.2d at 297 (quoting *People v. Kelly,* 423 Mich. 261, 378 N.W.2d 365, 372 (Mich.1985)). Thus, *Barrera*'s discussion of malice and willful and wanton disregard is restricted to the crime of aiding and abetting felony-murder which does not limit a finding of intent to a specific intent to kill.

**4.** Petitioner contends that the Michigan Supreme Court in *People v. Barrera,* 451 Mich. 261, 547 N.W.2d 280 (Mich.1996), modified the intent required of the aider and abettor by requiring that the aider and abettor possess "the same requisite intent as that required of [the] principal," *People v. Barrera,* 451 Mich. 261, 547 N.W.2d 280, 297 (Mich.1996), and not permitting a conviction on an aiding an abetting theory where the accomplice knew that the principal possessed an intent to kill. While the Supreme Court in *Barrera* did not discuss that second basis which is often cited by the Michigan Court of Appeals, nowhere in *Barrera* does the court suggest that it intended to modify or abandon the standard applied by the lower court.

he either possessed a specific intent to kill Bosyk and Pomoska or that he was aware of his accomplice's intent to kill the victims.

■ Both the State and the petitioner, in asserting the presence or lack thereof of an intent to kill, have focused on whether petitioner's accomplice covered both the mouths and noses of the victims when wrapping their faces with duct tape, thereby blocking all air passages of the victims, or whether he sealed only their mouths which would have left a means by which the victims could breathe and survive their attack. On this issue, the Michigan Court of Appeals, in its July 19, 1993 opinion, found that "[t]he tape covered their noses and mouths." *Warren*, 504 N.W.2d at 909. A review of the record reveals that, while the evidence conflicts, there exists a factual basis upon which the state court finding may be supported.

Detective Chester Olkowski testified at trial that, when he observed the victims on the floor of the livingroom, Bosyk and Pomoska's noses and mouths were covered with duct tape and he, therefore, could not see any openings or passageways through which the victims could breathe. Confirming Olkowski's observation, detective Milewsi testified that the duct tape was wrapped around both of their heads so thoroughly that no flesh was visible. Addressing Ms. Pomoska's condition, Casmere Dobrzycki, a Hamtramck Fire Department employee, testified that the duct tape was pressed up against her nasal passages but was pulled away slightly sometime prior to his arrival at the scene. James Szafarczyk, also of the Hamtramck Fire Department, similarly testified as to the tape surrounding Bosyk's nose. Several medical personnel observed upon their arrival that both victims were bluish in color and struggling for air.

In rebuttal, petitioner relies on the testimony of both victims, who did not specifically recount[5] that their noses were covered with duct tape, and on a treating doctor's opinion, that the duct tape was placed around the victims' mouths only. However, because evidence exists in the record to support the state court's finding that the victims' noses and mouths were covered with duct tape, the petitioner has not rebutted the presumption of correctness with clear and convincing evidence as required by 28 U.S.C. § 2254(e)(1).

■ Because the record supports the finding that the victims struggled to breathe as a consequence of the principal's actions of completely restricting the airways of the victims, we may infer that the principal possessed the specific intent to kill the victims. The question we must thus turn to is whether petitioner possessed the same intent or whether he knew that the principal possessed such an intent.

■ After a thorough review of the record, we conclude that a rational jury could have found that Warren was aware that the principal possessed an intent to kill Bosyk and Pomoska. We deem the items brought to the home by the perpetrators and Warren's relatively minimal role in subduing the victims inconclusive; however, by his own admission, petitioner witnessed the victims' faces covered with duct tape when he entered the kitchen to retrieve a screwdriver. Because we have deemed correct the state court finding that the victims' noses and mouths were covered with tape, petitioner consequently viewed the victims laying on the floor absent a manner by which they could breathe. Furthermore, because police and emergency medical technicians observed the victims struggling to breathe, the trier of fact may have permissibly inferred that petitioner observed the victims struggling to breathe as well. Even if Warren did not specifically intend for these victims to die, a rational jury was permitted to infer, from Warren's observation of their faces covered with duct tape, that he became aware of his accomplice's intent to kill the victims. Under these circumstances, therefore, we conclude that a rational jury may have inferred beyond a reasonable doubt that petitioner was aware that his accomplice possessed an intent to kill the victims.

---

**5.** Ms. Pomoska died prior to trial due to unrelated causes. Her testimony from the preliminary examination was thus introduced at trial.

## IV.

For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.