Douglas William ADRIAN, Petitioner,

v.

Blaine LAFLER, Respondent.

No. CIV.03–40093.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 15, 2004.

---

Brenda E. Turner, William C. Campbell, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for respondent.

Douglas Adrian, Freeland, MI, pro se.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Petitioner, a state prisoner presently confined at the Saginaw Correctional Facility in Freeland, Michigan, has filed a *pro se* petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of breaking and entering following a jury trial in the Antrim County Circuit Court in 2000. He was sentenced as a fourth habitual offender to ten to twenty-five years imprisonment. For the reasons stated below, the Court will deny the petition.

## I. FACTUAL BACKGROUND

Petitioner's conviction arises from a break-in at the Alden Bar in Alden, Michigan on September 2, 1998. At trial, bartender Robert Walsh testified that he closed the bar that evening and left the premises at approximately 2:25 a.m. Prior to leaving, Mr. Walsh took money from the cash register, bundled it without counting it, and put the money in a cigar box in the liquor room of the basement where the money was normally kept. He locked the bar, set the motion detector alarm system, and went home. Mr. Walsh lived about four miles from the bar. When he arrived home, he realized that he had not paid himself for the day. Mr. Walsh returned to the bar, took his pay of about $50.00 from the cigar box, and left a note detailing the amount. He then locked the bar again, reset the alarm, and returned home. Mr. Walsh testified that he was only at the bar for about five minutes between 2:45 a.m. and 2:55 a.m. Mr. Walsh testified that the motion detector alarm only covers the top landing portion of the stairs which lead to the bar's basement. Mr. Walsh gave the police a written statement the following day and acknowledged that he was a suspect.

The preliminary examination testimony of Ronald Baker, a neighbor to the Alden Bar, was admitted into evidence at trial. Mr. Baker testified that he noticed a slow-moving vehicle on the main street in Alden near his home at 3:00 a.m. on September 2, 1998. The truck traveled down the street, turned, came back, and eventually parked. The driver exited the truck and walked away. Mr. Baker did not see where the person went. This prompted Mr. Baker to telephone police twice: first to report the slow-moving vehicle and then to report a suspicious person walking around downtown. The police arrived about fifteen minutes after the first call. Mr. Baker saw the driver return to his truck and then saw the police talking to him. The police subsequently questioned Mr. Baker at his home.

Antrim County Sheriff Deputies Kevin Hoch and Keith DeYoung responded to Mr. Baker's call. Deputy Hoch arrived at 3:12 a.m. and Deputy DeYoung arrived at 3:15 a.m. They noticed the parked truck and began looking for the suspicious person in the area. Deputy DeYoung testified that he made sure that the doors to the Alden Bar were secure. When they saw the parked truck leave, they stopped the truck and questioned the driver. The

driver was Petitioner. Petitioner explained that he was on his way home to Pellston, Michigan, after leaving the Turtle Creek Casino and was just clearing his head. Deputy DeYoung observed that Petitioner's intended route was circuitous. The deputies allowed Petitioner to leave at approximately 3:30 a.m. and left the area at 3:58 a.m.

Randy Lefebre, co-owner of the Alden Bar, testified that, upon arriving at the bar on the morning of September 2, 1998, he noticed that the back door window of the bar was broken. He also noted that the alarm had not sounded. As he entered the basement, he noticed that the liquor room door was pried off and that the filing cabinet in the furnace room was pried open. He saw grease stains on the liquor room door. Mr. Lefebre then called the Sheriff's Department. Mr. Lefebre testified that he discovered that the cash and rolled coins kept in the liquor room were absent and that the daily deposit money and petty cash stored in the filing cabinet were also missing. Money that he kept in a bank bag upstairs in the bar was undisturbed, however. Mr. Lefebre testified that he was missing deposits totaling $1,050.40. When he subsequently went to the Sheriff's Department to identify certain money that was possibly taken from the bar, he indicated that the money at issue was sorted in a manner similar to the way he sorts his money, but could not positively identify the money.

Detective Donald Snyder testified that he contacted Petitioner later in the day on September 2, 1998, to question him about these events. Detective Snyder spoke with Petitioner in his police car while parked in Petitioner's driveway. Petitioner admitted that he was in Alden at 3:00 a.m. that day. Detective Snyder advised Petitioner of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S.

436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which Petitioner waived. During the conversation, Petitioner made several statements about making a "deal" in exchange for his cooperation in the investigation and the possible return of the stolen money. Petitioner expressed reluctance about providing information about the crime for fear of going "back to prison" because he was an "ex-con." Petitioner never expressly admitted committing the crime. At the end of the interview, local police arrested Petitioner on an erroneous report that he was driving on a suspended license. Later at trial, the jury was instructed that this arrest was invalid.

Based upon the interview, Detective Snyder obtained a search warrant for Petitioner's home and truck. Police then seized seventeen gloves from Petitioner's truck, a pry bar, several pairs of shoes, and various stacks of money from his home. Fingerprint testing of the money retrieved from Petitioner's home did not reveal matches for fingerprints from Alden Bar personnel. The shoes taken from Petitioner's home did not match impressions found at the bar. The pry-bar taken from Petitioner's home did not match markings found in the bar.

Michigan State Police Forensic Scientist Christopher Bommorito testified that grease found on one of the gloves seized from Petitioner's truck was consistent with a grease sample taken from the Alden Bar's back door, which included a hinge pin popped out of the doorway. Mr. Bommorito acknowledged that further, more refined testing of the glove or grease stains was not conducted.

Petitioner's defense at trial was that he did not commit the crime. Defense counsel introduced a surveillance tape from the Turtle Creek Casino indicating that Petitioner left the casino at 2:11 a.m. on September 2, 1998. Private Investigator Guy

Molby testified that it would take twenty minutes to drive from the Turtle Creek Casino to the Alden Bar.

Sheriff's Deputy Terry Skurnitt testified that he was the first officer to arrive at the Alden Bar after Mr. Lefebre reported the incident. Deputy Skurnitt testified that he collected evidence for the investigation and that he believed the shoe prints found in the bar were important.

Petosky Police Officer Robert Blomberg testified that he assisted in the search of Petitioner's vehicle and home, which took approximately four hours. He recalled that large amounts of cash and coins were seized from areas within the home, including above the kitchen cupboards.

The deposition testimony of Katherine Dillon, Petitioner's friend and former girlfriend, was admitted into evidence at trial. Ms. Dillon testified that Petitioner always had cash in home, which he kept above his kitchen cupboards. She also testified that Petitioner paid his bills in cash. Petitioner's friend Christy Lee Goodrich also testified that Petitioner paid for items in cash. One of Petitioner's employers, Edward Gustaffson, testified that he paid Petitioner in cash and that Petitioner always used cash for purchases. Mr. Gustaffson further testified that gloves recovered from Petitioner's truck and admitted into evidence were given to Petitioner and other employees as perks from a supplier.

Erich Speckin provided expert testimony in the area of infrared grease analysis. Mr. Speckin testified that he examined random grease samples, as well as the known samples taken from the bar and Petitioner's glove. He determined that all of the results were substantially similar such that the glove sample could not be eliminated as matching the sample from the Alden Bar. Mr. Speckin further stated that he would have done more tests to determine the origin of the grease. The prosecution significantly challenged Mr. Speckin's credentials on cross-examination such that the trial judge indicated regret at qualifying him as an expert.

## II. PROCEDURAL BACKGROUND

At the close of trial, the jury found Petitioner guilty of breaking and entering. The trial court subsequently sentenced Petitioner as a fourth habitual offender to ten to twenty-five years imprisonment. Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising claims concerning the sufficiency of the evidence, the admission of evidence, and sentencing. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Adrian,* No. 229759, 2002 WL 1011592, at *1 (Mich. Ct.App. May 17, 2002) (per curiam). Petitioner filed an application for leave to appeal with the Supreme Court of Michigan raising the same claims. On December 4, 2002, the Supreme Court of Michigan denied leave to appeal in a standard order. *People v. Adrian,* 467 Mich. 913, 655 N.W.2d 554 (2002).

Petitioner filed the instant petition on April 23, 2003 asserting two claims: (1) the State did not present sufficient evidence to convict the Petitioner for breaking and entering when considering the evidence most favorable to the State, and (2) the Petitioner was denied a fair trial because the trial judge erred in allowing the introduction of highly prejudicial statements made by the Petitioner to the investigating officer alluding to his prior convictions and incarceration. Respondent filed an answer on September 9, 2003, asserting that the petition should be denied for lack of merit. Petitioner filed a reply on September 18, 2003.

## III. LEGAL STANDARD

The standard for reviewing petitions for the writ of habeas corpus is provided for in 28 U.S.C. § 2254(d). This section states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Further, 28 U.S.C. § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. ANALYSIS

1. Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his breaking and entering conviction. In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court of the United States established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781; *see also Warren*, 161 F.3d at 360.

To convict Petitioner of breaking and entering under Michigan law, the prosecution was required to prove that he: (1) broke into a building, (2) entered the building, and (3) at the time of the breaking and entering, he intended to commit a larceny or felony. *See* Mich. Comp. Laws § 750.110; *People v. Adams*, 202 Mich. App. 385, 390, 509 N.W.2d 530 (1993). On appeal, the Michigan Court of Appeals applied the *Jackson* standard and rejected Petitioner's insufficient evidence claim, stating:

Defendant next argues that there was insufficient evidence to sustain his conviction. We disagree. We review challenges to the sufficiency of the evidence to determine whether, when the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. In making this determination, we will not interfere with the jury's role of determining the weight of evidence or the credibility of witnesses. In ascertaining whether guilt was proved beyond a reasonable doubt, we do not inquire into whether the prosecution was able to disprove every reasonable theory consistent with innocence, but only whether guilt was shown in the face of whatever contradictory evidence the defendant may provide. Further, circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime.

Breaking and entering requires a showing that the defendant broke into and entered a building with the intent to commit a larceny or felony therein. Here, the evidence against defendant was circumstantial, but strong. The evidence demonstrated that defendant was seen wandering the streets of Alden in

the early morning hours, at approximately 3:00 a.m., on the date of the break-in, that he drove his truck from where it had been parked with his headlights off, that his gloves had grease on them that was similar to the grease on the door broken into, and that he had large amounts of cash arranged in a manner consistent with that of the cash stolen from the bar. Further, defendant made a statement tantamount to a confession and repeatedly asked police whether a deal could be made. Even without the information that defendant was an "ex-con," information that had no relevance to his guilt, the evidence, considered in the light most favorable to the prosecution, is sufficient to establish defendant's guilt beyond a reasonable doubt.

*Adrian,* 2002 WL 1011592 at *2 (citations and internal quotations omitted).

■ Having reviewed the record, this Court concludes that the Michigan Court of Appeals' determination in this regard is consistent with *Jackson* and constitutes a reasonable application of federal law and the facts in light of the evidence. While circumstantial, there was sufficient evidence to establish Petitioner's guilt of breaking and entering the Alden Bar. The jury could have reasonably determined that Petitioner committed the offense based upon the fact that he was seen near the Alden Bar at approximately 3:00 a.m. when the crime was believed to have occurred, he had cash at home bound in a manner similar to the way money was kept at the bar, the police found a glove from his truck with a grease stain consistent with grease found on the bar's backdoor, and he made statements to police about making a deal which could be seen as an indication that he was involved in the crime.

■ Petitioner's insufficient evidence claim essentially challenges the inferences the jury drew from the testimony and evidence presented at trial. However, it is well-settled that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle,* 703 F.2d 959, 970 (6th Cir.1983) (quoting *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781). Given the evidence at trial, the Court concludes that a rational trier of fact could have found Petitioner guilty of breaking and entering beyond a reasonable doubt. Petitioner is thus not entitled to relief on this claim.

■ 2. Petitioner further claims that he is entitled to habeas relief because the trial court erred in admitting his statements to police which referenced his prior convictions and incarceration. It is well-established, however, that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Serra v. Mich. Dep't of Corrs.,* 4 F.3d 1348, 1354 (6th Cir.1993). Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting habeas relief. *Clemmons v. Sowders,* 34 F.3d 352, 356 (6th Cir.1994).

■ The Michigan Court of Appeals addressed this issue and concluded that the trial court did not abuse its discretion under Michigan law, stating:

Defendant ... argues that the trial court erred in admitting into evidence

statements that defendant made to police, after receiving *Miranda* warnings, that alluded to his prior convictions and incarceration. Specifically, defendant takes issue with the trial court's ruling that allowed reference to defendant being an "ex-con" and "going back to prison." We review the trial court's decisions on the admission of evidence for abuse of discretion.

At trial, a police detective testified about his conversation with defendant regarding whether defendant was involved in a burglary at the Alden bar. According to the detective, "[defendant] told me that he was an ex-con and that he would go back to prison if he talked to me about it." The detective further testified that defendant sought instead to make a "deal" with police, asking among other things what kind of deal could be made if the money were returned. Over defendant's objections, the trial court permitted this evidence to be presented through the detective's testimony, although no evidence as to the nature of defendant's previous crimes was permitted. The trial court instructed the jury that the testimony could be considered only for the limited purpose of determining whether defendant was identifying himself as the person who committed the crime under investigation, and not for any other purpose. Specifically, the trial court told the jury that the testimony could not be considered as evidence that "defendant is a bad person, or that he is likely to commit crimes[;] you must not convict the defendant here because you think he is guilty of other bad conduct."

We disagree with defendant's argument that the probative value of this testimony was substantially outweighed by its prejudicial effect. Under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Here, the evidence was highly probative; while it did not quite constitute a confession, the trial court was correct in finding that it was "tantamount to a confession." In contrast, the prejudice to defendant from this evidence was strictly limited, both by the trial court's limiting instruction, which the jury can be presumed to have followed, and the fact that the jury was not told the nature of defendant's other crimes, which included breaking and entering and other similar offenses. Moreover, while any evidence that is probative of a defendant's guilt is, by definition, prejudicial to the defendant, the specific prejudice from defendant's reference to being an "ex-con" came not from police or prosecution attempts to introduce extraneous evidence of prior bad acts, but rather from defendant's own decision, after receiving *Miranda* warnings, to admit that talking truthfully about the crime would result in his being convicted of it and to volunteer the unsolicited information that he had a criminal record. We find no abuse of discretion.

*Adrian*, 2002 WL 1011592 at *1 (citations and footnotes omitted).

■ Because the Michigan Court of Appeals did not address whether the alleged error constituted a denial of Petitioner's federal rights, this Court must conduct an independent review of the state court's decision. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* This independent review "is not a full, de

novo review of the claims, but remains deferential." *Id.*

Having reviewed the record, this Court concludes that the admission of Petitioner's statements through the testimony of Detective Snyder did not violate Michigan law nor deny Petitioner a fair trial. The evidence was properly admitted by the trial court as a matter of discretion under Rule 403 of the Michigan Rules of Evidence. The challenged statements about "going back to prison" and being an "ex-con" were made by Petitioner to the detective after Petitioner was advised of his *Miranda* rights and waived those rights; they were not introduced by the prosecution in an effort to put forth evidence of prior bad acts. Moreover, the trial court specifically instructed the jury regarding the proper consideration of this testimony.

■ Moreover, even if the trial court erred in admitting the references to Petitioner's prior incarceration, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir.1999) (harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error). Here, even excluding the references to Petitioner's prior incarceration, the record reveals that Petitioner made statements reflecting potential guilt when he discussed making a deal with the police. Further, the other testimony and evidence presented at trial, as detailed *supra,* provided circumstantial evidence of Petitioner's guilt of breaking and entering the Alden Bar. Given such evidence, the Court concludes that the trial court's admission of the disputed portions of Detective Snyder's testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. Petitioner is therefore not entitled to habeas relief on this claim.

## V. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA with this Court within **TWENTY–ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

**SO ORDERED.**

### *JUDGMENT*

The above entitled action having come before the Court on a petition for the writ of habeas corpus, 28 U.S.C. § 2254, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that Petitioner is entitled to **NO RELIEF** and

that this action be, and the same hereby is, **DISMISSED WITH PREJUDICE.**