James KELLEY a/k/a/ James
Kelly, Petitioner,

v.

Andrew JACKSON, Respondent.

No. CIV.A.04–CV–40058–FL.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 20, 2005.

James Kelley, Detroit, MI, Pro Se.

Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, Frank J. Bernacki, Wayne County Prosecutor's Office, Detroit, MI, for Andrew Jackson, Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Petitioner James Kelley, a state prisoner currently confined at the Mound Correctional Facility in Detroit, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Respondent Andrew Jackson is the warden at the Mound Correctional Facility. Petitioner was convicted of second-degree murder and possession of a firearm during the commission of a felony following a bench trial in the Wayne County Circuit Court in 2001. In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence and the legality of his arrest and subsequent admission of evidence. For the reasons stated below, the Court will deny the petition for writ of habeas corpus.

## I. Facts

Petitioner's convictions stem from the shooting death of Senita Bentley at her home in Detroit, Michigan on November 9, 1999. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F.Supp.2d 753, 758 (E.D.Mich.2001), *aff'd.* 41 Fed.Appx. 730, 2002 WL 1363514 (6th Cir.2002), as follows:

On November 9, 1999, Senita Bentley sustained multiple gunshot wounds that resulted in her death. Earlier that evening, Bentley's friend, Sheila Smith, saw defendant at Bentley's house. Several hours later, Smith returned to Bentley's house and heard two sounds, which she later believed to be gunshots. Smith went to the door and rang the bell. No one answered, but Smith observed a man looking out the window. While Smith was unable to see the man's face, she noticed that he was wearing the same clothes that she had observed defendant wearing earlier that evening. Smith then observed the man running from Bentley's house to a burgundy car that she had observed defendant driving in earlier that evening.

When the police arrived, the living room of Bentley's home displayed signs of a struggle. Blood found on the doorknob was linked to defendant by DNA testing. Defendant, who had a previous sexual relationship with Bentley, was arrested on November 22, 1999. A warrant was issued the next day. On November 24, 1999, defendant made a statement to the police in which he denied killing Bentley. The following colloquy was contained in defendant's statement:

Q. Why did you kill [Bentley]?

A. I didn't.

Q. Why is everyone saying you did?

A. I have no idea. Maybe because I did not come back over to the house on Ward and for not coming around after.

No objection was made to this portion of the statement at trial.

At the conclusion of trial, the trial court convicted defendant of second-degree murder and possession of a firearm during the commission of a felony.

*People v. Kelley*, No. 233756, 2002 WL 31955221, *1 (Mich.App. Dec. 17, 2002) (unpublished). The trial court subsequently sentenced Petitioner to a term of 20 to 40 years imprisonment on the murder conviction and a consecutive term of two years imprisonment on the firearm conviction

## II. *Procedural History*

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting several claims of error, including the claims contained in the present petition. The Michigan Court of Appeals affirmed his convictions. *People v. Kelley*, No. 233756, 2002 WL 31955221 (Mich.App. Dec. 17, 2002) (unpublished). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Kelley*, 468 Mich. 917, 662 N.W.2d 753 (2003).

Petitioner filed the present habeas petition on February 19, 2004 asserting that: (1) the prosecution presented and the trial court relied upon insufficient evidence to support his convictions and (2) the DNA evidence and his statement were improperly admitted as fruit of the poisonous tree arising from his illegal arrest. Respondent filed an answer to the petition on September 20, 2004 asserting that the petition should be denied.

## III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1996). In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court instructed:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application"

clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13, 120 S.Ct. 1495 (O'Connor, J., delivering the opinion of the Court on this issue).

■ In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 411, 120 S.Ct. 1495. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

■ The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent United States Supreme Court precedent.

■ Finally, this Court presumes the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. *Analysis*

### A. *Insufficient Evidence Claim*

■■ Petitioner first contends that he is entitled to habeas relief because there was insufficient evidence presented at trial to support his murder and felony firearm convictions. In *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781; *see also DeLisle v. Rivers,* 161 F.3d 370, 389 (6th Cir.1998). The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell,* 280 F.3d 594, 617 (6th Cir.2002). Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. 2781. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys,* 319 F.3d 780, 788–89 (6th Cir. 2003) (citation omitted).

■ Under Michigan law, conviction of second-degree murder requires proof of the following elements: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke,* 457 Mich. 442, 463–64, 579 N.W.2d 868 (1998). To prove malice, the prosecution must establish that the defendant has the intent to kill or do great bodily harm, or has created and disregarded a very high risk of death. *Id.* at 466, 579 N.W.2d 868. Circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense.

*People v. Plummer*, 229 Mich.App. 293, 299, 581 N.W.2d 753 (1998). The elements of felony firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *People v. Avant*, 235 Mich.App. 499, 505, 597 N.W.2d 864 (1999).

■ The Michigan Court of Appeals considered this claim and concluded that there was sufficient evidence for a rational trier of fact to conclude that Petitioner was guilty of second-degree murder and felony firearm. *See Kelley*, 2002 WL 31955221 at *4–5. This Court finds that the Michigan Court of Appeals' decision is consistent with *Jackson* and constitutes a reasonable application thereof, as well as a reasonable determination of the facts in light of the evidence. At trial, the testimony of Sheila Smith and the DNA evidence provided circumstantial evidence that Petitioner committed the shooting. The fact that the victim was shot three times in her face and chest provides evidence that Petitioner acted with the requisite malice and intent. No evidence was presented to establish an excuse or justification for the shooting. Given such evidence, a rational trier of fact could conclude that Petitioner committed the crimes at issue beyond a reasonable doubt. Petitioner's insufficient evidence claim essentially challenges the weight to be accorded certain pieces of evidence. Such determinations, however, are not matters for federal habeas review. It is well-settled that a "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir.1983). Petitioner is not entitled to relief on this claim.

**B. *Fourth Amendment Claim***

Petitioner next claims that he is entitled to habeas relief because his police statement and the incriminating DNA evidence were the product of an illegal arrest. This claim, however, has been procedurally defaulted.

■ A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *See Wainwright v. Sykes*, 433 U.S. 72, 85, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

■ On the Fourth Amendment claim, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing Petitioner's claim, the court relied upon a state procedural bar: Petitioner's failure to move in a timely manner for a suppression hearing in the trial court. *See Kelley*, 2002 WL 31955221 at *6. The failure to make a timely objection is a recognized and firmly-established independent and

adequate state law ground for refusing to review trial errors. *See Coleman v. Thompson,* 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also Thomas v. Campbell,* 47 F.3d 1170, 1995 WL 29448, *1 (6th Cir.1995) (habeas petitioner procedurally defaulted Fourth Amendment claim). The Court notes that plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir.2000).

■■■ A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546; *Gravley v. Mills,* 87 F.3d 779, 784–85 (6th Cir.1996). In this case, Petitioner neither alleges nor establishes cause to excuse his default. A federal habeas court need not address the issue of prejudice if a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Long v. McKeen,* 722 F.2d 286, 289 (6th Cir.1983).

■■■ Nonetheless, the Court notes that Petitioner cannot establish prejudice. Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir.2000) (quoting *Riley v. Gray,* 674 F.2d 522 (6th Cir.1982)).

Michigan has a procedural mechanism that presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim. *See, e.g., People v. Ferguson,* 376 Mich. 90, 93–94, 135 N.W.2d 357 (1965) (motion to suppress), *People v. Harris,* 95 Mich.App. 507, 509, 291 N.W.2d 97 (1980). Petitioner has not shown that a failure of that procedural mechanism prevented him from litigating his claims. The record reveals that Petitioner did not challenge the legality of his arrest prior to trial, but first raised the issue on direct appeal. The Michigan Court of Appeals concluded that Petitioner had failed to properly raise the issue, reviewed the claim for plain error, and denied relief. *See Kelley,* 2002 WL 31955221 at *6. Given this record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he received all the process he was due. Accordingly, any claim concerning the validity of Petitioner's arrest is not cognizable on habeas review pursuant to *Stone v. Powell.*

■■■ Finally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual

innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Petitioner has made no such showing. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

## V. *Conclusion*

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus [docket entry 1] is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA with this Court within **TWENTY–ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **ELEVEN (11) DAYS** of service of Petitioner's motion for a COA.